# William H. Frederick, Appellee, v. City of Peoria, Appellant.

## Gen. No. 6,260.

1. MUNICIPAL CORPORATIONS, § 120*—*when formal approval of bond of police officer does not affect its validity.* A surety company bond given by a police officer, as required by a city ordinance, is a valid and subsisting obligation, upon continued payment of the yearly premiums thereon, notwithstanding it was not formally approved by the city.

2. MUNICIPAL CORPORATIONS, § 135*—*when certificate of appointment as police officer is admissible in action for salary.* A certificate regularly issued to a police officer by a board of fire and police commissioners of a city, certifying to his appointment by the board as such officer, is competent and admissible evidence in an action by him to recover salary claimed to be due him as such officer.

3. MUNICIPAL CORPORATIONS, § 131*—*when status of police officer is not affected by failure to renew oath of office.* Where a police officer of a city was regularly issued a certificate by the board of fire and police commissioners of the city of his appointment as such officer, gave bond as required by the ordinances of the city, which he renewed from year to year by payment of the annual premium thereon, and took the required oath of office when first appointed as such officer, *held* that such officer was to all intents and purposes a legal officer of the city, notwithstanding he did not, under instructions of his superior officer, renew each year his oath of office, and such fact could not be taken advantage of by the city to defeat his claim for salary.

4. MUNICIPAL CORPORATIONS, § 135*—*when city is estopped from denying that police officer is entitled to salary.* Where a city paid a police officer a certain amount as salary and deducted therefrom a certain per cent. as a legal contribution for the pension fund, *held* that this would be a conclusive admission by the city that the amounts paid were the correct amounts to which such officer was entitled as salary, and by regularly paying such officer his monthly salary as an officer the city would be in effect estopped from denying he was legally entitled to such salary.

5. MUNICIPAL CORPORATIONS, § 135*—*when deduction from salary of officer may not be made.* A city has no right to withhold from

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

a police officer a part of his salary on account of his absence from duty when he was sick.

Appeal from the Circuit Court of Peoria county; the Hon. CLYDE E. STONE, Judge, presiding. Heard in this court at the October term, 1916. Affirmed. Opinion filed August 10, 1916. Rehearing denied October 5, 1916.

R. H. RADLEY, for appellant.

SUCHER & MOORE and KIRK & SHURTLEFF, for appellee.

MR. PRESIDING JUSTICE NIEHAUS delivered the opinion of the court.

This suit was instituted by the appellee, William H. Frederick, in the Circuit Court of Peoria county, against the City of Peoria, to recover $239.53, which he claimed as a balance due him, on account of salary, as patrol officer in the police department of the City of Peoria. The case was tried by the court without a jury, and the court found in favor of the appellee, and gave him a judgment against the city for the sum of $239.50; from this judgment appellant appealed.

It is not disputed that the appellee served the city as a patrolman, but it is claimed by the appellant that the proof does not show that appellee was an officer *de jure* and in order to establish a right to recover a salary, as an officer, it is necessary that there should be proof that he was an officer *de jure* and not merely a *de facto* officer.

The appellee was first appointed as a police officer in November, 1905, and qualified as such officer by giving the bond required by the ordinances of the city, and taking the required oath of office. He served as a police officer continuously until June, 1909, when he was laid off from service by the chief of police, his superior officer, until January, 1910, having, however,

been assigned to some special work in the fall of the year 1909. In January, 1910, the appellee was again assigned to duty by the chief of police, and then served continuously as a patrol officer (except where sickness intervened) until the 14th of April, 1913.

Commencing with October, 1911, until April 13, 1913, there were certain periods of time when appellee was disabled from performing service as an officer by attacks of inflammatory rheumatism, a disease which he had contracted during his service for the city. During all the time that he served as police officer for the city, the city regularly paid him his monthly salary, but, in the last three years of such service, deducted therefrom certain amounts for the time that he was laid up on account of sickness. Appellee testified that in this way he was "docked" from October 15 to October 31, 1911, $25.25; from November 1 to November 15, 1911, $37.50; from January 1 to January 15, 1913, $7.35; from September 16 to September 30, 1912, $5; from October 1 to October 15, 1912, $15; from October 15 to November 30, 1912, $112.50; and from April 1 to April 14, 1913, $36.92; a total of $239.52.

Appellee's first appointments to office were made by the mayor of the city, with the approval of the city council, but on the 5th day of April, 1910, the City of Peoria adopted the Act of the General Assembly, providing for the appointment of a board of fire and police commissioners; and in conformity with this act the mayor, on the 26th of April, 1910, appointed a board of fire and police commissioners, consisting of John Newsam, P. A. Wendell and F. B. Dalzell, and this board was regularly approved by the city council. The appellee received his last appointment, which directly relates to this controversy, by this board of fire and police commissioners. The board, in the regular course of the official business, issued to him a certificate authenticating the fact that he had been

examined by the board, as to his qualifications for the position of patrolman, had passed the necessary examination, and had been appointed and confirmed, by the board as such patrolman, with all the rights, powers and duties which by law pertain to that office.

The appellee had, under a previous appointment, in March, 1908, filed in the office of the city clerk a surety company bond, in the sum of $1,000, in accordance with the requirements of the city ordinances. After his appointment by the board of fire and police commissioners, and during the years covering the matters in controversy, he had renewed this official bond by the payment of the annual premiums, by which the bond was renewed. The bond filed in 1908, and by its renewal during the years 1911, 1912 and 1913, was a valid and subsisting obligation as an official bond of appellee, without the formal approval of such bond by the city, according to the principles enunciated by the Supreme Court in *Ramsay's Estate v. People,* 197 Ill. 572. Appellee did not take his oath of office anew, because, as he testified, the chief of police, his superior officer, told him that he need not do so; that the oath previously taken would hold.

As evidence of the fact that he was regularly appointed as a police officer of the City of Peoria, the appellee offered in evidence the certificate of appointment, issued to him by the board of fire and police commissioners; and appellant contends that the certificate was not competent evidence of appellee's appointment to the office; that he should have proven such appointment by the records of the board. We are of opinion that the issuance of the certificate in question to appellee, which appears to have been done regularly in due course of the business of the board, though not especially required by law, was a proper official act of the board, for the purpose of furnishing the appellee with notice of his appointment, and the *indicia* of his

authority to serve as a patrolman, and was competent evidence in a case of this kind brought to recover the salary pertaining to the office, to which the certificate shows he was regularly appointed. The certificate was therefore properly admitted in evidence.

We are of opinion that the competent and legal proof in the record not only shows that the appellee was legally appointed to the office of patrolman, but that he substantially complied with the requirements of the city ordinances in giving an official bond; and that, while he did not renew his oath of office, he was to all intents and purposes a legal officer of the city, recognized as such by the city, and served as such for the city during the years 1910, 1912 and part of 1913. The fact that he failed to renew his oath of office under the instructions of his superior officer could not be taken advantage of by the city, under the circumstances detailed, to defeat his claim for his salary.

Appellant also contends that there is no competent evidence offered to show that the amount of appellee's salary was fixed at $70 during the time that he was receiving $70 per month; and that there is no proof that it was raised to $75 per month, and finally to $80 per month. We are of opinion that the fact, which appears in evidence and which is undisputed, that the city paid these respective amounts at the different periods, and also deducted therefrom the one per cent. legal contribution for the pension fund, under the law, is a conclusive admission by the city that the amounts so paid were the correct amounts to which the appellee was entitled as salary, and no other proof was necessary in the first instance to establish these facts. Moreover, the city, by regularly paying appellee his monthly salary as a patrolman, is in effect estopped to deny that he was not legally entitled to such salary. In this state of the proof the only real question left for determination is the right of the city to withhold

from the appellee certain parts of the salary which the city was paying him, on account of absence from duty when he was sick. It has been clearly settled in this State that the city had no such right. (*People v. Bradford,* 267 Ill. 486.)

For the reasons stated, the court did not err in finding the issues in favor of the appellee, and rendering judgment in his favor, and the judgment should be affirmed.

*Affirmed.*